On Application foe, Rehearing-.
Eenner,’ J.
This case presents no question except one, viz.: whether the record of the instrument in question, in the office of the Recorder *800 of Mortgages, secures to the beneficiary the rights of a mortgage1 creditor as against third persons.
The provisions of our law relative to the inscription of mortgages, and regulating the effect of such inscriptions, necessarily refer to instruments known and defined in the law of Louisiana as mortgages, by which we do not mean that the use of the word “ mortgage” is sacramental, but only that the instrument must contain all the elements essential to constitute a Louisiana mortgage, and none inconsistent therewith.
It is needless to say that the mere record of an instrument in the mortgage book of a Recorder, cannot make that a mortgage which is not such, and that if the instrument be not a mortgage, its inscription cannot make it operate as such as against third persons.
Tiie instrument now under consideration is what is known as a common law mortgage. To ascertain whether or not a common law mortgage is the same thing as a Louisiana mortgage, we have only to examine the definitions of the former, given by the highest authorities :
“ Amortgage is a transfer oí property, as securityfora debt.” Conrad vs. Atlantic, 1 Peters, 386.
“ Mortgage is the conveyance of an estate, by way of pledge, for the security of debt, and to become void on payment of it.” 4 Kent’s Com. 136.
“ A mortgage, at common law, may be defined to be an estate created by a conveyance, absolute in its form, but intended to secure the performance of some act, such as the payment of money and the like, by the grantor or some other person, and to become void if the act is performed, agreeably to the terms prescribed, at the time of making such conveyance. It is, therefore, an estate defeasible by the performance of a condition subsequent.” 1 Washburn’s Real Prop. 478.
The mere statement of these definitions indicates at once the wide divergence and, indeed, inconsistency, between such an instrument and the contract known and defined as a mortgage in the law of Louisiana.
While it is essential, in the former, that the title should pass, and perfectly permissible that the possession also should pass to the mortgagee or to a third person for his benefit, it is equally essential, in the latter contract, that both the title and possession (as owner) should remain in the mortgagor or his subsequent assigns, so much so, tlmt the acquisition of title by the mortgagee would operate, eo instanti, to extinguish the mortgage.
A lawyer profoundly versed in the abstruse, shifting and complicated jurisprudence of England and our sister States of this Union, and perhaps some of our citizens bred in those States, would be aware that *801 courts of equity in their interpretation and administration of rights and remedies of parties to these instruments, have so construed and modified their meaning and effect as to assimilate them more closely to our own mortgages, than would have been deemed possible from the plain expressions of the instruments. But the great mass of our people, who are to be affected with notice by the inscription of such instruments, have not these advantages; and we are at a loss to understand upon what principle we could- hold such persons bound to know, or to take notice, that an instrument, purporting- on its face to divest the title of the alleged mortgagor, could possibly operate as a mortgage granted by him.
They are certainly not in the slightest degree affected by the intentions of the parties to the act, except in so far as those intentions are expressed therein.
We rest our conclusion here.
We are not now concerned with questions as to what may be the effect of such instruments, as between the parties, nor what might be their effects, even as against third persons if recorded as conveyances.
We merely hold that the instrument before us is not, upon its face, in form or in substance, a mortgage, and that its record in the mortgage book cannot give effect to it as a mortgage against third persons.
We believe it to be sound policy to discourage the use of forms of contract not known to our law, and to save third persons from the effect of ambiguous contracts, not expressing their nature and effect upon their face, and only to be understood in the sense desired by reversing the ordinary meaning of words.
The question, in its present shape, is res nova, and former decisions, properly interpreted, contain nothing inconsistent with our present position.
Rehearing refused.
The Chief Justice concurs in this opinion and decree, and Judge Tissot, called in place of Justice Poché, recused, also concurs, with reasons assigned in his separate opinion.
Justice Todd dissents.